

**United States Department of Justice**

*United States Attorney*
*Southern District of West Virginia*

---

*Robert C. Byrd United States Courthouse*
*300 Virginia Street, East*
*Suite 4000*
*Charleston  WV 25301*
*1-800-659-8726*

*Mailing Address*
*Post Office Box 1713*
*Charleston, WV 25326*
*304-345-2200*
*FAX: 304-347-5104*

December 9, 2016

Rhett H. Johnson
Assistant Federal Public Defender
300 Virginia Street, East
Room 3400
Charleston, WV 25301

FILED

JAN 2 3 2017

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

Re:  United States v. Kim Cooper

Dear Mr. Johnson:

This will confirm our conversations with regard to your client, Kim Cooper (hereinafter "Ms. Cooper"). As a result of these conversations, it is agreed by and between the United States and Ms. Cooper as follows:

1. **CHARGING AGREEMENT.** Ms. Cooper agrees to waive her right pursuant to Rule 7 of the Federal Rules of Criminal Procedure to be charged by indictment and will consent to the filing of a two-count information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

2. **RESOLUTION OF CHARGES.** Ms. Cooper will plead guilty to violations of 18 U.S.C. § 1343 and 26 U.S.C. § 7201, as charged in said information.

3. **MAXIMUM POTENTIAL PENALTY.** The maximum penalty to which Ms. Cooper will be exposed by virtue of this guilty plea is as follows:

*hc*
‾‾‾‾‾‾‾‾‾‾‾
Defendant's
Initials

Rhett H. Johnson
December 9, 2016                    Re: Kim Cooper
Page 2

### COUNT ONE

(a)  Imprisonment for a period of 20 years;

(b)  A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

(c)  A term of supervised release of three years;

(d)  A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

(e)  An order of restitution pursuant to 18 U.S.C. §§ 3663A and 3664, or as otherwise set forth in this plea agreement.

### COUNT TWO

(a)  Imprisonment for a period of five years;

(b)  A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

(c)  A term of supervised release of three years;

(d)  A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

(e)  An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664, or as otherwise set forth in this plea agreement.

(f)  Costs of prosecution.

_____
Defendant's
Initials

Rhett H. Johnson
December 9, 2016                         Re: Kim Cooper
Page 3

TOTAL MAXIMUM POTENTIAL PENALTIES

(a)   Imprisonment for a period of 25 years;

(b)   A fine of $500,000, or twice the gross pecuniary gain or
      twice the gross pecuniary loss resulting from
      defendant's conduct, whichever is greater;

(c)   A term of supervised release of three years;

(d)   A mandatory special assessment of $200 pursuant to 18
      U.S.C. § 3013; and

(e)   An order of restitution pursuant to 18 U.S.C. §§ 3663,
      3663A, and 3664, or as otherwise set forth in this plea
      agreement.

(f)   Costs of prosecution.

    4.   **SPECIAL ASSESSMENT.** Prior to the entry of a plea pursuant
to this plea agreement, Ms. Cooper will tender a check or money
order to the Clerk of the United States District Court for $200,
which check or money order shall indicate on its face the name of
defendant and the case number. The sum received by the Clerk will
be applied toward the special assessment imposed by the Court at
sentencing. Ms. Cooper will obtain a receipt of payment from the
Clerk and will tender a copy of such receipt to the United States,
to be filed with the Court as an attachment to this plea agreement.
If Ms. Cooper fails to provide proof of payment of the special
assessment prior to or at the plea proceeding, the United States
will have the right to void this plea agreement. In the event this
plea agreement becomes void after payment of the special
assessment, such sum shall be promptly returned to Ms. Cooper.

    5.   **RESTITUTION.** Notwithstanding the offenses of conviction,
Ms. Cooper agrees that she owes restitution in the amount of
$1,462,023.83 to Mountain State Justice, and $377,776.89 to the

*kc*
_____
                                        Defendant's
                                        Initials

Rhett H. Johnson
December 9, 2016                    Re: Kim Cooper
Page 4


United States, and agrees to pay such restitution, with interest
as allowed by law, to the fullest extent financially feasible. In
aid of restitution, Ms. Cooper further agrees as follows:

(a)   Ms. Cooper agrees to fully assist the United States in
      identifying and locating any assets to be applied toward
      restitution and to give signed, sworn statements and
      testimony concerning assets upon request of the United
      States.

(b)   Ms. Cooper will fully complete and execute, under oath,
      a Financial Statement and a Release of Financial
      Information on forms supplied by the United States and
      will return these completed forms to counsel for the
      United States within seven calendar days from the date
      of the signing of this plea agreement.

(c)   Ms. Cooper agrees not to dispose of, transfer or
      otherwise encumber any real or personal property which
      she currently owns or in which she holds an interest.

(d)   Ms. Cooper agrees to fully cooperate with the United
      States in the liquidation of assets to be applied towards
      restitution, to execute any and all documents necessary
      to transfer title of any assets available to satisfy
      restitution, to release any and all right, title and
      interest she may have in and to such property, and waives
      her right to exemptions under the Federal Debt
      Collection Procedures Act upon levy against and the sale
      of any such property.

(e)   Ms. Cooper agrees not to appeal any order of the District
      Court imposing restitution unless the amount of
      restitution imposed exceeds the amount set forth in this
      plea agreement. However, nothing in this provision is
      intended to preclude the Court from ordering Ms. Cooper
      to pay a greater or lesser sum of restitution in
      accordance with law.

                                          _hc_____
                                          Defendant's
                                          Initials

Rhett H. Johnson
December 9, 2016                    Re: Kim Cooper
Page 5

   **6.   IRS COLLECTION OF RESTITUTION.** If the Court orders Ms.
Cooper to pay restitution to the IRS for the failure to pay tax,
either directly as part of the sentence or as a condition of
supervised release, the IRS will use the restitution order as the
basis for a civil assessment. See 26 U.S.C. § 6201(a)(4). Ms.
Cooper does not have the right to challenge the amount of this
assessment. See 26 U.S.C. § 6201(a)(4)(C). Neither the existence
of a restitution payment schedule nor Ms. Cooper's timely payment
of restitution according to that schedule will preclude the IRS
from   administrative   collection   of   the   restitution   based
assessment, including levy and distraint under 26 U.S.C. § 6331.

   **7.   PAYMENT OF MONETARY PENALTIES.** Ms. Cooper agrees not to
object to the District Court ordering all monetary penalties
(including the special assessment, fine, court costs, and any
restitution that does not exceed the amount set forth in this plea
agreement) to be due and payable in full immediately and subject
to immediate enforcement by the United States. So long as the
monetary penalties are ordered to be due and payable in full
immediately, Ms. Cooper further agrees not to object to the
District Court imposing any schedule of payments as merely a
minimum schedule of payments and not the only method, nor a
limitation on the methods, available to the United States to
enforce the judgment.

   **8.   COOPERATION.** Ms. Cooper will be forthright and truthful
with this office and other law enforcement agencies with regard to
all inquiries made pursuant to this agreement, and will give
signed, sworn statements and grand jury and trial testimony upon
request of the United States. In complying with this provision,
Ms. Cooper may have counsel present except when appearing before
a grand jury.

   **9.   ASSISTANCE TO INTERNAL REVENUE SERVICE.** Ms. Cooper
agrees to cooperate with the Internal Revenue Service in the
determination of her civil income tax liability for the taxable
years 2006 - 2015 and to make available to the examining agents

                                          _____
                                          Defendant's
                                          Initials

Rhett H. Johnson
December 9, 2016                    Re: Kim Cooper
Page 6

all books, records and other documentary evidence in her
possession, custody or control, including all materials provided
to the defense, through discovery or otherwise, during this
proceeding by the attorneys for the government and any criminal
investigators assisting them.

    **10.   USE IMMUNITY.** Unless this agreement becomes void due to
a violation of any of its terms by Ms. Cooper, and except as
expressly provided for in paragraph 12 below, nothing contained in
any statement or testimony provided by her pursuant to this
agreement, or any evidence developed therefrom, will be used
against her, directly or indirectly, in any further criminal
prosecutions or in determining the applicable guideline range
under the Federal Sentencing Guidelines.

    **11.   LIMITATIONS ON IMMUNITY.** Nothing contained in this
agreement restricts the use of information obtained by the United
States from an independent, legitimate source, separate and apart
from any information and testimony provided pursuant to this
agreement, in determining the applicable guideline range or in
prosecuting Ms. Cooper for any violations of federal or state laws.
The United States reserves the right to prosecute Ms. Cooper for
perjury or false statement if such a situation should occur
pursuant to this agreement.

    **12.   STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.**
The United States and Ms. Cooper stipulate and agree that the facts
comprising the offenses of conviction include the facts outlined
in the "Stipulation of Facts," a copy of which is attached hereto
as "Plea Agreement Exhibit B."

    Ms. Cooper agrees that if she withdraws from this agreement,
or this agreement is voided as a result of a breach of its terms
by her, and she is subsequently tried for her conduct alleged in
the information, as more specifically described in the Stipulation
of Facts, the United States may use and introduce the Stipulation
of Facts in the United States case-in-chief, in cross-examination
of Ms. Cooper or of any of her witnesses, or in rebuttal of any

*hc*
_____
Defendant's
Initials

Rhett H. Johnson
December 9, 2016                          Re: Kim Cooper
Page 7


testimony introduced by her or on her behalf. Ms. Cooper knowingly
and voluntarily waives, see United States v. Mezzanatto, 513 U.S.
196 (1995), any right she has pursuant to Fed. R. Evid. 410 that
would prohibit such use of the Stipulation of Facts. If the Court
does not accept the plea agreement through no fault of the
defendant, or the Court declares the agreement void due to a breach
of its terms by the United States, the Stipulation of Facts cannot
be used by the United States.

        The United States and Ms. Cooper understand and acknowledge
that the Court is not bound by the Stipulation of Facts and that
if some or all of the Stipulation of Facts is not accepted by the
Court, the parties will not have the right to withdraw from the
plea agreement.

        **13.  AGREEMENT ON SENTENCING GUIDELINES.** Based on the
foregoing Stipulation of Facts, the United States and Ms. Cooper
agree that the following provisions of the United States Sentencing
Guidelines apply to this case.

Count One:

        Base offense level                        7
        (USSG §2B1.1)

        Loss greater than $1,500,000           + 16
        (USSG §2B1.1(b)(1)(I))

        There is no agreement on whether the specific offense
characteristic of using sophisticated means (USSG
§2B1.1(b)(10)(C)), or an adjustment for abuse of trust (USSG
§3B1.3), should apply.

Count Two:

        Tax Loss more than $250,000              18
        (USSG §2T1.1(a)(1) & §2T4.1)


                                        _hc_____
                                        Defendant's
                                        Initials

Rhett H. Johnson
December 9, 2016                    Re: Kim Cooper
Page 8

    Failure to report income exceeding
    $10,000 from criminal activity          + 2
    (USSG §2T1.1(b)(1))

The United States and Ms. Cooper agree that the offenses in Counts One and Two should group, pursuant to USSG §3D1.2(d), and that the higher guideline level for Count One should therefore apply.

Furthermore, the United States and Ms. Cooper acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range.

**14. WAIVER OF APPEAL AND COLLATERAL ATTACK.** The United States and Ms. Cooper knowingly and voluntarily waive their rights to seek appellate review of her conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742, except:

The defendant may appeal:

(a)   a sentence that exceeds the maximum penalty prescribed by statute, and

(b)   a decision by the District Court, pursuant to the Sentencing Guidelines or 18 U.S.C. § 3553(a), to make an "upward departure" or "upward variance" from the total offense level calculated by the District Court or the guideline range corresponding to that level.

The United State may appeal:

(a)   a sentence that is below the minimum penalty, if any,

                                        _____
                                        Defendant's
                                        Initials

Rhett H. Johnson
December 9, 2016                          Re: Kim Cooper
Page 9

      prescribed by statute, and

    (b)  a decision by the District Court, pursuant to the
Sentencing Guidelines or 18 U.S.C. § 3553(a), to make a
"downward departure" or "downward variance" from the
total offense level calculated by the District Court or
the guideline range corresponding to that level.

      Ms. Cooper also knowingly and voluntarily waives the right to
challenge her guilty plea and conviction resulting from this plea
agreement, and any sentence imposed for the conviction, in any
collateral attack, including but not limited to a motion brought
under 28 U.S.C. § 2255.

      The waivers noted above shall not apply to a post-conviction
collateral attack or direct appeal based on a claim of ineffective
assistance of counsel.

      **15.**   **WAIVER OF FOIA AND PRIVACY RIGHT.** Ms. Cooper knowingly
and voluntarily waives all rights, whether asserted directly or by
a representative, to request or receive from any department or
agency of the United States any records pertaining to the
investigation or prosecution of this case, including without any
limitation any records that may be sought under the Freedom of
Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974,
5 U.S.C. § 552a, following final disposition.

      **16.**   **FINAL DISPOSITION.** The matter of sentencing is within
the sole discretion of the Court. The United States has made no
representations or promises as to a specific sentence. The United
States reserves the right to:

    (a)  Inform the Probation Office and the Court of all relevant
facts and conduct;

    (b)  Present evidence and argument relevant to the factors
enumerated in 18 U.S.C. § 3553(a);

                                        *kc*
                                      Defendant's
                                        Initials

Rhett H. Johnson
December 9, 2016                        Re: Kim Cooper
Page 10

    (c)   Respond to questions raised by the Court;

    (d)   Correct inaccuracies or inadequacies in the presentence report;

    (e)   Respond to statements made to the Court by or on behalf of Ms. Cooper;

    (f)   Advise the Court concerning the nature and extent of Ms. Cooper's cooperation; and

    (g)   Address the Court regarding the issue of Ms. Cooper's acceptance of responsibility.

    **17.**   **VOIDING OF AGREEMENT**. If either the United States or Ms. Cooper violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

    **18.**   **TAX DIVISION APPROVAL**. It is understood that this agreement is conditioned upon approval by the Department of Justice, Criminal Tax Division. In the event such approval is not granted, this agreement shall be void.

    **19.**   **ENTIRETY OF AGREEMENT**. This written agreement constitutes the entire agreement between the United States and Ms. Cooper in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Ms. Cooper in any Court other than the United States District Court for the Southern District of West Virginia.

 

*kc*
_____
Defendant's
Initials

Rhett H. Johnson
December 9, 2016                    Re: Kim Cooper
Page 11


          Acknowledged and agreed to on behalf of the United States:

                         CAROL A. CASTO
                         United States Attorney


                    By: _____
                         PHILIP H. WRIGHT
                         First Assistant United States
                         Attorney

PHW/vld

I hereby acknowledge by my initials at the bottom of each of the
foregoing pages and by my signature on the last page of this
eleven-page agreement that I have read and carefully discussed
every part of it with my attorney, that I understand the terms of
this agreement, and that I voluntarily agree to those terms and
conditions set forth in the agreement. I further acknowledge that
my attorney has advised me of my rights, possible defenses, the
Sentencing Guideline provisions, and the consequences of entering
into this agreement, that no promises or inducements have been
made to me other than those in this agreement, and that no one has
threatened me or forced me in any way to enter into this agreement.
Finally, I am satisfied with the representation of my attorney in
this matter.



_____          __12-16-16_____
Kim Cooper                         Date Signed
Defendant


_____          __12-16-16_____
Rhett H. Johnson                   Date Signed
Assistant Federal Public Defender
Counsel for Defendant

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                                          CRIMINAL NO. _____
                                            18 U.S.C. § 1343
                                            26 U.S.C. § 7201

KIM COOPER


# I N F O R M A T I O N

The United States Attorney charges:

## COUNT ONE
## (Wire Fraud)

### The Scheme to Defraud

1.    Beginning on or about June 30, 2004, and continuing
through on or about March 24, 2016, defendant KIM COOPER did
knowingly devise and intend to devise a scheme to defraud and to
obtain money from her employer, Mountain State Justice, Inc., by
means of materially false and fraudulent pretenses and
representations.

### Background

At all relevant times:

2.    Mountain State Justice was a non-profit organization
that provided legal services and representation for low-income
West Virginians in civil lawsuits. Mountain State Justice was based
in Charleston, West Virginia, and also had an office in Clarksburg,

1

**PLEA AGREEMENT EXHIBIT A**

West Virginia. Mountain State Justice had an eight-member board of directors, which managed its affairs.

3.   From time to time, and in the course of providing legal services and representation, Mountain State Justice received checks in the mail as part of the settlement of lawsuits. Some of those checks were payable to Mountain State Justice for attorneys' fees.

4.   COOPER began working at Mountain State Justice, in Charleston, West Virginia, in the late 1990's, performing clerical work. Her responsibilities grew over time, and eventually she became the office manager at Mountain State Justice in Charleston. As such, she reported directly to the executive director of Mountain State Justice.

5.   As the office manager, COOPER was responsible for overseeing daily operations in the Charleston office, including preparing and making deposits of checks into Mountain State Justice's bank accounts; properly accounting for deposits; and providing financial information to an outside accountant.

6.   The outside accountant reconciled bank statements, paid bills, prepared a budget, and prepared quarterly income statements based on information from Mountain State Justice's bank account statements and other records. The income statements reflected Mountain State Justice's revenues, which included attorneys' fees paid to Mountain State Justice.

2

**PLEA AGREEMENT EXHIBIT A**

7.    As part of her responsibilities, COOPER sent the income statements via e-mail to the members of Mountain State Justice's board of directors. One of the board members resided outside of West Virginia.

8.    It was the policy and practice of Mountain State Justice to compile, in a folder in the Charleston office, the information and materials that the outside accountant needed to perform her duties. Such materials included bank statements received in the mail for all of the various accounts of Mountain State Justice.

<u>Manner and Means for Carrying Out the Scheme</u>

The manner and means by which COOPER carried out her scheme to defraud Mountain State Justice included the following:

9.    On or about June 30, 2004, COOPER opened a money market account at WesBanco Bank, Inc. (the "WesBanco account"), at a branch in Charleston, West Virginia. The WesBanco account was opened in the name of Mountain State Justice, but COOPER was the only Mountain State Justice employee aware of the existence of the account. The outside accountant was not aware of the WesBanco account.

10.   COOPER had signature authority over the WesBanco account, so she could write checks on it. COOPER kept the checkbook for the WesBanco account.

11.   Beginning in approximately early July 2004, COOPER began to steal certain checks that had been mailed or delivered to

3
**PLEA AGREEMENT EXHIBIT A**

Mountain State Justice and which were made payable to Mountain State Justice. The checks represented payment of attorneys' fees owed to Mountain State Justice for its work on lawsuits on behalf of its clients.

12. COOPER, without authorization, deposited the stolen checks into the WesBanco account.

13. After depositing the stolen checks into the WesBanco account, COOPER wrote checks on the WesBanco account to herself and to a close family member ("family member"). COOPER endorsed those checks and deposited them into an account at City National Bank that was in COOPER's name and the name of the family member. COOPER then wrote checks on the City National account to pay her rent and the rent of her family member, make car payments for her vehicle and those of her relatives, and make credit card and other payments for personal expenses.

14. COOPER hid her criminal activity in many ways, including:

- Secretly opening and maintaining the WesBanco account;

- Stealing attorneys' fees checks and subsequently depositing them into the WesBanco account;

- Omitting the attorneys' fees checks from Mountain State Justice's cash log;

- Taking and hiding all mail from WesBanco, including envelopes containing statements for the WesBanco account, to ensure that they were not placed in the office folder for the outside accountant and to conceal,

from the other employees of Mountain State Justice and the outside accountant, the very existence of the account.

15. Furthermore, COOPER sent false and fraudulent quarterly income statements via email to the members of Mountain State Justice's board of directors, knowing that the income statements were inaccurate inasmuch as they understated Mountain State Justice's income from attorneys' fees because they did not include the monies COOPER had stolen.

16. In this manner, from approximately June 30, 2004, through on or about March 24, 2016, COOPER defrauded Mountain State Justice out of over $1.5 million.

<u>Use of the Wire in Furtherance of the Scheme</u>

17. On or about December 1, 2015, at or near Charleston, Kanawha County, West Virginia, and within the Southern District of West Virginia, and elsewhere, defendant KIM COOPER knowingly transmitted and caused to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, and signals, for the purpose of executing the above-described scheme. That is, COOPER sent an email to a member of Mountain State Justice's board of directors who resided outside of West Virginia and who received the email outside of West Virginia. The email included an attachment, which was an income statement that understated the amount of attorneys' fees received by Mountain State Justice through November 2015. COOPER knew that the income

5

**PLEA AGREEMENT EXHIBIT A**

statement contained the false and fraudulent information when she sent it via email to the board member outside of West Virginia.

In violation of Title 18, United States Code, Section 1343.

**PLEA AGREEMENT EXHIBIT A**

**COUNT TWO**
**(Tax Evasion)**

1.   The United States Attorney re-alleges and incorporates by reference paragraphs 2 through 16 of Count One of this Information as if fully set forth herein.

2.   At all relevant times, defendant KIM COOPER was a resident of Saint Albans, West Virginia, who worked for Mountain State Justice, Inc. in Charleston, West Virginia.

3.   During the calendar year 2015, COOPER had and received taxable income in the sum of $316,572.49. This income included monies that COOPER took by fraud from Mountain State Justice, as described in the paragraphs incorporated by reference from Count One, and actual, legitimate wages received from Mountain State Justice. Upon that taxable income, there was owing to the United States an income tax of 88,075.17.

4.   From on or about January 1, 2015, until on or about April 15, 2016, at or near Saint Albans, Kanawha County, West Virginia, within the Southern District of West Virginia, defendant KIM COOPER, well knowing and believing the foregoing facts, did willfully attempt to evade and defeat the income tax due and owing by her to the United States for the calendar year 2015, in the amount of $76,291.17, by the following affirmative acts of evasion:

- COOPER hid from her employer, Mountain State Justice, and its outside accountant, the existence of the money market account at WesBanco Bank, Inc., that she used to deposit checks she had stolen from Mountain State Justice.

7

**PLEA AGREEMENT EXHIBIT A**

- COOPER wrote numerous checks on the secret WesBanco account to a close family member and disguised the true purpose of the checks by writing false information on the memo line of each check. Such false information included notations that the checks were to reimburse the close family member for "payroll," "conference/expenses," travel, or a bonus. The notations gave the false impression that COOPER's close family member was actually employed by Mountain State Justice and thus hid the fact that the WesBanco account was not a legitimate business account, but merely a conduit for COOPER to use the monies for her own personal benefit.

- COOPER failed to make an income tax return on or before April 15, 2016, as required by law, to any proper officer of the Internal Revenue Service, and pay to the Internal Revenue Service the income tax owed.

In violation of Title 26, United States Code, Section 7201.

UNITED STATES OF AMERICA

CAROL A. CASTO
United States Attorney

By: _____
PHILIP H. WRIGHT
First Assistant United States
Attorney

8

**PLEA AGREEMENT EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                                          CRIMINAL NO._____

KIM COOPER

STIPULATION OF FACTS

The United States and defendant KIM COOPER (hereinafter
"defendant") stipulate and agree that the facts comprising the
offenses of conviction (Counts One and Two in the information),
and the relevant conduct for those offenses, include the following:

1.  Background.

In the late 1990's, defendant began working for Mountain State
Justice, Inc., which is a non-profit organization that provides
legal services for indigent and low-income West Virginia residents
in civil cases. It has offices in Charleston, Kanawha County, West
Virginia, and in Clarksburg, West Virginia. Defendant worked in
the Charleston office. Initially, she performed clerical work, but
her responsibilities grew over time until she became the office
manager, reporting directly to the executive director of Mountain
State Justice.

Defendant's duties as office manager included overseeing the
daily operations in the Charleston office. She also prepared and
made deposits of checks in Mountain State Justice's bank accounts.
Some of the checks received in the Charleston office were payment
of attorneys' fees, for Mountain State Justice's representation of
clients in law suits. All checks were to be listed or documented
on a "cash log."

Mountain State Justice used an outside accountant to prepare
financial records such as income statements and balance sheets. It
was the policy and practice of the Charleston office of Mountain
State Justice to accumulate materials for the outside accountant
in a folder. The outside accountant would periodically retrieve

PLEA AGREEMENT EXHIBIT B

the materials, which she used to prepare the financial records.
Statements from the various accounts held by Mountain State Justice
that were received in the mail would be placed in the folder, in
unopened envelopes.

It was the policy and practice of Mountain State Justice to
forward the income statements and balance sheets prepared by the
outside accountant to the members of the board of directors of
Mountain State Justice. Defendant received the income statements
and balance sheets from the outside accountant and then sent them
via e-mail to the board members, one of whom resided outside of
West Virginia.

2.  Wire Fraud.

In approximately late-June 2004, defendant devised a scheme
to defraud Mountain State Justice, which she carried out in the
following ways:  First, she established a money market account at
WesBanco Bank, Inc. in the name of Mountain State Justice. However,
defendant told no one else at Mountain State Justice about the
account. Nor was the outside accountant aware of the account. Then,
defendant began stealing checks made out to Mountain State Justice
that were payment for attorneys' fees. Defendant deposited those
stolen checks in the WesBanco account.

Defendant subsequently wrote checks on the WesBanco account.
Almost all of the checks were made payable to a close family
member, with notations on the memo line of the checks that made it
appear as if the checks were written for legitimate purposes of
Mountain State Justice. Defendant endorsed those checks and then
deposited them into another account, at City National Bank. She
then used the funds in the City National account to pay her rent
and the rent of her family member, make car payments on her vehicle
and those of her relatives, and make credit card and other payments
for personal expenses.

From approximately June 30, 2004, when defendant established
the WesBanco account, until on or about March 2, 2016, when she
last made a deposit of a stolen check into the WesBanco account,
defendant defrauded Mountain State Justice out of over $1.5
million.

Defendant hid the existence of the WesBanco account by
omitting, from the "cash log" maintained by Mountain State Justice,
the checks for attorneys' fees she had stolen. The cash log was
used to record all receipts of monies, including checks. In
addition, defendant took and hid all mail received from WesBanco,

**PLEA AGREEMENT EXHIBIT B**

including the bank statements, to ensure that they were not placed in the folder for the outside accountant. By doing so, no one else became aware of the existence of the WesBanco account.

Defendant perpetuated her fraud scheme by knowingly transmitting false and fraudulent information to the members of the board of directors of Mountain State Justice. The false and fraudulent information was contained on income statements, which underreported the amount of money for attorneys' fees received during any period in which she had stolen checks.

The false and fraudulent information was material to Mountain State Justice, because the board members relied on the information in evaluating the financial health of the company and in overseeing its affairs. Moreover, the underreporting of the income was material, because had the board members and executive director learned that defendant was stealing money from Mountain State Justice, they would have terminated her employment immediately.

On or about December 1, 2015, defendant transmitted an e-mail from Charleston, Kanawha County, West Virginia, in the Southern District of West Virginia, to the board of directors, one of whom was outside of West Virginia when the e-mail was transmitted and received by that board member. The e-mail contained attachments, including an income statement for Mountain State Justice for November 2015. The income statement reported year-to-date revenue from attorneys' fees to be $2,025,571 as of November 22, 2015. This number was false and fraudulent because it did not include monies stolen by defendant, as described above. Defendant knew the income statement contained inaccurate revenue information at the time she transmitted the e-mail to which the income statement was attached.

Defendant's fraud scheme ended no later than March 24, 2016, when she was interviewed by federal law enforcement agents. Her employment at Mountain State Justice ended soon thereafter.

3.   Tax Evasion.

During the calendar year 2015, defendant, a resident of St. Albans, Kanawha County, West Virginia, in the Southern District of West Virginia, had a taxable income of $316,572.49.   This amount included income earned legitimately, as part of her job with Mountain State Justice, and monies she had stolen from Mountain State Justice, as described above. The amount of taxes owed to the Internal Revenue Service by defendant for her 2015 income was $88,075.17.

**PLEA AGREEMENT EXHIBIT B**

Defendant had until April 15, 2016, to make and file an income tax return, as required by law, to any proper officer of the IRS, and to pay to the IRS the income tax owed. Defendant, however, never made and filed a return, and never paid a substantial portion of the tax owed. The amount of income tax owed by defendant to the IRS for 2015 income is $76,291.17. (Mountain State Justice had withheld, and paid over to the IRS, $11,784.00 from defendant's legitimate income in 2015.)

Defendant knowingly and intentionally attempted to evade and defeat the income tax that was due and owed by her to the IRS. She knew she had legitimate income from Mountain State Justice, as well as income from the monies stolen by her. She knew that she owed income taxes on both incomes. She committed acts of tax evasion by attempting to hide her illegitimate income from the monies stolen from Mountain State Justice. She did so in the following ways:

- She hid the existence of the WesBanco account from Mountain State Justice and the outside accountant, even though the account had been opened in name of Mountain State Justice. She did this in part by taking all mail received from WesBanco and not placing that mail in the folder used to hold materials for the outside accountant.

- She wrote numerous checks on the secret WesBanco account to a close family member, and disguised the true purpose of those checks by writing false information on the memo line of the checks. For example, she included notations such as "payroll," "conference/expenses," "travel," or "bonus," to make it appear as if the close family member was an employee of Mountain State Justice, which was not true.

- She used a separate bank account, maintained at City National Bank, to deposit the checks written on the WesBanco account and which were made payable to the close family member. She used the City National account to withdraw monies to pay bills, for herself and her relatives, and for other personal expenses. By using the City National account, and not the WesBanco account, to pay for personal expenses, she maintained the appearance that the WesBanco account was a legitimate business account of Mountain State Justice.

**PLEA AGREEMENT EXHIBIT B**
4

As a final act of evasion, defendant failed to make and file a return for her 2015 income on or before April 15, 2016, and failed to pay to the IRS the taxes owed.

Defendant also knowingly, intentionally, and willfully attempted to evade and defeat the income tax due and owing by her to the IRS for other taxable years, 2006 through 2014. The additional tax due and owing for 2015 and the other years is as follows:

| Year | Tax Due and Owing |
|------|-------------------|
| 2006 | $ 12,462.00 |
| 2007 | $ 14,649.00 |
| 2008 | $ 13,472.00 |
| 2009 | $ 26,347.80 |
| 2010 | $ 29,763.72 |
| 2011 | $ 41,291.80 |
| 2012 | $ 47,778.90 |
| 2013 | $ 49,689.85 |
| 2014 | $ 66,030.65 |
| 2015 | $ 76,291.17 |
| Total | $377,776.89 |

This Stipulation of Facts does not contain each and every fact known to defendant and to the United States concerning her involvement in the charges set forth in the information.

Stipulated and agreed to:


_____     Date     _____
KIM COOPER                                    12-16-16
Defendant


_____              _____
RHETT H. JOHNSON,                             12-16-16
Assistant Federal Public Defender             Date
Counsel for Defendant


_____              _____
PHILIP H. WRIGHT                              12-19-16
First Assistant United States Attorney        Date


**PLEA AGREEMENT EXHIBIT B**

5